RUSSELL C. SMITH AND MARY A. SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6832–70. Filed October 18, 1972.

*Donald Blanken*, for the petitioners.
*Howard W. Gordon*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency of $2,220.65 in petitioners' Federal income tax for the year 1966.

We must decide whether $5,804.35 of a lump sum of $44,500 received by the petitioners in 1966 in settlement of a Pennsylvania condemnation proceeding is taxable as ordinary income in that year under section 61(a)(4), I.R.C. 1954.

### FINDINGS OF FACT

Most of the facts have been stipulated by the parties. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Russell C. Smith and Mary A. Smith (herein called petitioners) were legal residents of Upper Darby, Pa., when they filed their petition in this proceeding. They filed a joint Federal income tax return for the year 1966 with the district director of internal revenue at Philadelphia, Pa.

A portion of the property owned by the petitioners was condemned on June 23, 1964. The property condemned comprised only a portion of three parcels of land owned by them. The basis of the entire property, including that condemned, was $10,501.

Petitioners had a realized gain on that portion of the three parcels condemned.

The land was taken by condemnation pursuant to the plan of L. R. 23062, section 3, for the County of Delaware. This plan was signed by the Governor on June 23, 1964, with the Commonwealth of Pennsylvania, Department of Highways, thereby acquiring by condemnation an easement for highway purposes of a portion of the petitioners' property.

The Commonwealth of Pennsylvania employed Samuel C. Warwick, a real estate appraiser, to make an appraisal of the property taken. On August 16, 1965, he submitted a report to the Commonwealth of Pennsylvania wherein he found that the property taken had a value of $11,600. Because of changes in construction plans, Mr. Warwick amended his original appraisal on July 13, 1966, finding that the total damages were in the neighborhood of $25,800.

The Commonwealth of Pennsylvania also obtained an appraisal from William J. Sammon who found that the damages resulting from the condemnation were $33,100.

Petitioners obtained an appraisal from Harry L. Haeberle in the amount of $54,500.

Since the petitioners and the Commonwealth of Pennsylvania were not able to agree as to the amount to be paid for damages resulting from the condemnation, the petitioners filed a Petition for Appointment of a Board of Viewers on June 13, 1966. Their petition requested

just compensation and detention damages.[1] More specifically, the petitioners requested the following relief from the court:

Wherefore, your petitioners pray your honorable court to appoint a Board of Viewers in the manner provided by law to ascertain and award the just compensation due to the petitioners *along with damages in delay of payment thereof.* [Emphasis supplied.]

On June 13, 1966, the Court of Common Pleas of Delaware County, Pennsylvania, appointed a "Board of Viewers, to view the petitioners' premises and to assess the damages done thereto in accordance with law."

On August 18, 1966, the petitioners' counsel demanded $50,000 to settle their claim for damages as a result of the condemnation.

On September 27, 1966, Edward D. Werblun, assistant attorney general, made a counteroffer to settle the petitioners' claim as follows:

I am prepared to offer, and I hereby do offer the sum of $44,500 as full settlement of this matter, *including detention damages, interest to date of payment* and costs of the proceedings. [Emphasis supplied.]

Petitioners' condemnation claim was settled on the basis of the counteroffer made by the Commonwealth of Pennsylvania which included detention damages, interest, and cost of litigation.

Offers made by the Commonwealth of Pennsylvania in settlement of condemnation actions provide that interest is included as part of a gross amount as a standard practice.

Settlements on a gross amount basis which includes all elements of damages (i.e., land taken, severance damages, and delay compensation) is the usual practice in the Commonwealth of Pennsylvania.

The Commonwealth of Pennsylvania pays the total amount of interest due, i.e., that required by law.

Edward D. Werblun, acting for the Commonwealth of Pennsylvania, did take into consideration interest or detention damages which the petitioners were entitled to herein. He does not know whether a jury would have allowed the petitioners delay compensation if he opposed it on the basis of a failure on their part to negotiate in good faith or for some other reason.

Michael Deckman, who was Edward D. Werblun's superior and an assistant attorney general and principal right counsel in charge of the Eminent Domain Section of the Department of Transportation Legal Bureau, interprets Pa. Stat. Ann., tit. 26, sec. 1–611, as entitling a condemnee to delay compensation as a matter of right.

A settlement memorandum signed by Michael Deckman noted that there was insufficient evidence to indicate a refusal to negotiate in good

---

[1] The terms "detention damages," "interest," "delay damages," and "payment for delay in compensation" will be used interchangeably herein.

faith; and it was Michael Deckman's opinion that the petitioners were entitled to detention damages.

The settlement reached between the petitioners and the Commonwealth of Pennsylvania was stipulated to and submitted to the Court of Common Pleas of Delaware County on October 31, 1966. The stipulation signed by the parties in the eminent domain proceedings provides in pertinent part:

it is agreed that said settlement shall be in full and final settlement of any and all claims that the said Claimants may have as a result of the condemnation instituted by the Commonwealth of Pennsylvania, and it is further agreed that said sum shall include therein any amount claimed for interest or detention damages up to and including the 23rd day of November, 1966, and that if payment is delayed beyond November 23, 1966, interest shall be paid on said agreed sum of Forty-four Thousand Five Hundred ($44,500.00) Dollars at the legal rate of interest.

The order entered by the court reads as follows:

AND Now, to wit, this 31st day of October, A.D., 1966, upon consideration of the within Stipulation, the Court hereby approves the settlement between Russell C. Smith, et ux. and the Commonwealth of Pennsylvania, Department of Highways in the amount of Forty-four Thousand Five Hundred ($44,500.00) Dollars as a full and final settlement of any and all claims the said Claimants may have as a result of the condemnation of Plaintiffs' property located at the corner of Hampton Road and Marshall Road, Upper Darby, Pennsylvania. And, it is further ordered that the said sum of Forty-four Thousand Five Hundred ($44,500.00) Dollars shall be allocated to Fourteen Thousand Five Hundred ($14,500.00) Dollars for the land condemned and Thirty Thousand ($30,000.00) Dollars for the severance damages to the part of the property not condemned.

On November 14, 1966, John R. Rezzolla, Chief Counsel, by J. R. Braderman, Assistant Attorney General, placed the claim of the petitioners in line for payment. The authority placing the claim in line for payment made an allocation of the gross amount of $44,500 between detention damages of $5,804.35 and the net award of $38,695.65.

A settlement memorandum prepared by the Department of Highways on November 29, 1966, and signed by Mr. Deckman, reads, in part, as follows:

After negotiation with counsel for the claimants and after consultation with the Right of Way Bureau, the matter was settled in the gross amount of $44,500.00.

As this was a partial taking not involving occupied improvements and inasmuch as there is insufficient evidence of either an exorbitant demand or a refusal to negotiate on the part of the claimant to rebut the presumption that the claimant is entitled to detention damages, it is the opinion of counsel that detention damages would be payable in this case. The gross settlement thus represents a net damage figure of $38,695.65 and detention damages of $5,804.35, computed at the legal rate of 6% as follows:

$38.695.65 (net award) × 15% (30 months from date of condemnation to date of full payment) = $5,804.35.

The amount of detention damages attributable to the severance damages is \$3,913.05. The amount of detention damages attributable to the land condemned is \$1,891.30. The total amount of detention damages is \$5,804.35.

## OPINION

The dispute herein is whether or not interest was included in the condemnation settlement. Petitioners contend that none of the \$44,500 they received in settlement of the condemnation proceeding should be allocated to interest (detention damages or delay in compensation). They stress the fact that the court order of the Common Pleas Court of Delaware County did not make any allocation of the gross settlement to interest. Respondent, on the other hand, contends that the Commonwealth of Pennsylvania allocated \$5,804.35 to interest (detention damages) and \$38,695.65 to the property taken. He argues that, as a result of the condemnation, the petitioners did not waive, but in fact requested and received, payment for delay in compensation which they were entitled to as a matter of right under Pennsylvania law.

It is settled law that interest, detention damage, or payment for delay in compensation received in connection with a condemnation is taxable as ordinary income. *Kieselbach* v. *Commissioner*, 317 U.S. 399, 403 (1943). See also *William C. Ferreira*, 57 T.C. 866 (1972).

The authority of law for taking the petitioners' property was provided when the Governor of Pennsylvania signed plan LR 23062, sec. 3, for the County of Delaware on June 23, 1964. Although the Commonwealth had the authority of law to condemn the petitioners' property, the State was required to give them just compensation. Pennsylvania Constitution, art. I, sec. 10.

On June 22, 1964, the day before the taking in question, title 26— The Eminent Domain Code of the Pennsylvania Statutes—was adopted and article VI of that Code was in effect at that time. See Pa. Stat. Ann., tit. 26, sec. 1–302. Upon condemnation the "condemned shall be entitled to just compensation for the taking, injury or destruction of his property, determined as set forth in this article." Pa. Stat. Ann., tit. 26, sec. 1–601. To determine whether the petitioners were entitled to receive interest (delay compensation) we must look to Pa. Stat. Ann., tit. 26, sec. 1–611, which provides as follows:

The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment shall, however, be paid at the rate of six percent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation:

Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict.

The comment of the Joint State Government Commission (1964 report), pertaining to section 1–611, states in part:

This section is suggested by the procedure in Federal takings where interest is automatically added to the final award at the rate of 6%, but no interest is allowed on any money paid into court. * * *

This changes the existing law which states that the condemnee is prima facie entitled to damages for delay except where the delay is the fault of the condemnee (e.g., unreasonable demand by the condemnee). Moffat Appeal [Appropropriation and Taking of Lands of Moffatt, Situated in Lackawanna County] 400 Pa. 123 [161 A.2d 352] (1960). The courts, however, have been reluctant to find that the delay was the fault of the condemnee. In the absence of evidence of the commercial rate of interest, the condemnee is entitled to 6% for delay compensation. Lehigh Valley Trust Co. v. Pennsylvania Turnpike Commission, 401 Pa. 135 [163 A.2d 86] (1960). This section sets the figure in all cases at 6%.

Under this section the condemnee is entitled to delay compensation as a matter of right. However, he is not entitled to such compensation on the money which has been paid to him or deposited in court by the condemnor who has done so to obtain possession. See Section 407 [section 1–407 of this title]. Where the money is paid to the condemnee or deposited in court by the condemnor to obtain possession from the condemnee, the condemnee would still be entitled to delay compensation from the date of taking to the date the money is paid to him or deposited in court. The condemnee is only entitled to the one 6% on his award. He would not be entitled to the 6% and then interest on that 6%. In other words, it is not intended by this section to have interest being paid on delay compensation.

In view of the clear language of the Pennsylvania statute there is a presumption that interest (delay compensation) was received by the petitioners at the 6-percent rate. Moreover, we think the evidence as a whole supports this presumption. In adopting the settlement reached by the parties the Common Pleas Court made an allocation between the land condemned and severance damages in accordance with Pa. Stat. Ann., tit. 26, sec. 1–501. But this in no way precludes a further allocation as between the various types of damages and delay compensation, as required by Pa. Stat. Ann., tit. 26, sec. 1–611. The manner in which the settlement document was drawn makes note of the fact that the settlement included interest (delay compensation). And the Common Pleas Court, in approving the settlement, was aware of the petitioners' right to compensation for delay in payment.

Even under Pennsylvania case law prior to the enactment of the Eminent Domain Code the petitioners would have been entitled to delay damages. See *Wolf* v. *Commonwealth*, 170 A.2d 557, 561 (Pa. 1961); *Frontage, Inc.* v. *County of Allegheny*, 162 A.2d 1 (Pa. 1960).

Under section 1231(a), I.R.C. 1954, the award of damages resulting from a condemnation is considered to be a sale or exchange of a capital asset held longer than 6 months. The gain from such condemnation will be recognized unless the provisions of section 1033(a) are met. Condemnation awards are usually composed of at least three elements, i.e., property taken, severance damages, and interest. This situation is no exception. Petitioners were not only entitled as a matter of right to receive interest (detention damages), but they did in fact receive it. See *Watson* v. *Commissioner*, 345 U.S. 544 (1953); *Williams* v. *McGowan*, 152 F.2d 570 (C.A. 2, 1945); and Rev. Rul. 70-465, 1970-2 C.B. 162.

Petitioners' simplistic argument that since no amount of "interest" was stated in the court's order, then none was paid, is like cotton candy—it looks good but it has no substance. Cf. *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945). In our judgment they cannot escape taxation on ordinary income (interest) merely because the amount was not expressly stated in the order of the Common Pleas Court, especially when the amount is easily susceptible of calculation.

Accordingly, we hold that $5,804.35 was received by the petitioners as delay in compensation, which is in the nature of interest, and is therefore taxable as ordinary income under section 61(a)(4) of the Code.

*Decision will be entered for the respondent.*